IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ILEANA R. ROUSSEAU,

    Plaintiff,

vs.

GREEN TREE SERVICING, LLC.,
A Minnesota Limited Liability Company.

_____/

## COMPLAINT FOR DAMAGES

Plaintiff Ileana Rousseau ("Plaintiff"), by and through undersigned counsel, sues Defendant Green Tree Servicing, LLC., and alleges:

### I.   THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a natural person, a citizen of Broward County, Florida, over the age of 21 and otherwise sui juris.

2. Defendant Green Tree Servicing, LLC. is a Minnesota limited liability company with is principal place of business in the State of Minnesota. However, one of Green Tree's members is Walter Investment Management Corporation, which is a citizen of the State of Florida. Accordingly, because a limited liability company is a citizen of every state where its members are citizens, GreenTree is a citizen of Florida. Defendant will be referred to hereafter as "Green Tree." Among other business activities, Green Tree acts as a mortgage servicer managing and administering mortgage loans on behalf of mortgage investors who participate in the secondary mortgage market. Green Tree is subject to specific federal laws and

administrative regulations governing its mortgage serving activities. These laws include, but are not limited to, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et. seq. (hereinafter RESPA) and implementing Regulation X, (12 C.F.R § 1024), hereinafter "Regulation X."

3. In this action, Plaintiff pursues a claim under the Real Estate Settlement Procedures Act, 12 U.S.C §2601, et. seq. Thus, this action presents a federal question giving this Court subject matter jurisdiction over that claim under 28 U.S.C. § 1331. Plaintiff also pursues an additional claim under the theory of negligence under the common law of the State of Florida. Because the state law negligence claim arises out of a common nucleus of operative fact, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II. GENERAL ALLEGATIONS

4. Plaintiff owns a home in Davie, Florida, which she purchased on or about August 31st, 2006. In order to purchase that home, Plaintiff obtained a mortgage in the amount of $396,000 from Countrywide Home Loans, Inc. Sometime after the mortgage transaction was consummated, Plaintiff's mortgage was sold through the secondary mortgage market. The majority of all residential mortgages in the United States have been sold through the secondary mortgage market. As a result, the majority of residential mortgages in the United States belong to secondary market participants such as the Federal National Mortgage Association (also known as "Fannie Mar" or "FNMA"), The Federal Home Loan Mortgage Corporation (also known as "Freddie Mac" or "FHLMC"), or private securitizations, often referred to "collateralized debt obligations" "CDOs", collateralized mortgage obligations "CMOs", Real Estate Mortgage Investment Conduits ("REMICS") or securitized trusts. According, Plaintiff's mortgage belongs to one of those entities, and it does not belong to Green Tree. Thus, there is no debtor/creditor relationship between Plaintiff and Green Tree. Furthermore, since Green Tree is not a party to

any relevant contract involving Plaintiff, it is not entitled to enforce contractual jury trial waiver provisions.

5. Plaintiff's mortgage loan is a federally related mortgage loan and is therefore covered by the Real Estate Settlement Procedures Act.

6. Green Tree currently services Plaintiff's mortgage loan on the investor's behalf.

7. On or about August 6th, 2014, as the correspondence attached hereto as Exhibit "A" explains, Plaintiff, through counsel, notified Green Tree of errors regarding Plaintiff's mortgage loan account by letter. That letter expressly invokes the recently amended error resolution procedures established by RESPA and Regulation X (12 C.F.R § 1024.35). That letter also requested information relating to the servicing of the loan and specifically invoked Regulation X's related procedures for requesting information in connection with the servicing of the loan. Those procedures are codified in Regulation X at 12 C.F.R. § 1024.36.

8. On or around September 19th, 2014, Green Tree responded stating an additional fifteen (15) days extension would be needed to investigate and respond to Plaintiff's RESPA inquiry. The letter from Green Tree is attached hereto as "Exhibit B."

9. Notably, the letter from Green Tree attached as Exhibit "B" acknowledges Green Tree's duty, under Regulation X, to respond. However, there was no further response from Green Tree.

10. Green Tree violated its express obligations under 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36 by wholly failing to respond to Plaintiff's Qualified Written Request/Notice of Error.

11. In its final rule and official interpretations implementing the recently amended version of Regulation X, the Consumer Financial Protection Bureau describes the mortgage servicing industry as follows: [1]

> Mortgage servicing is performed by banks, thrifts, credit unions, and non-banks under a variety of business models. In some cases, creditors service mortgage loans that they originate or purchase and hold in portfolio. Other creditors sell the ownership of the underlying mortgage loan, but retain the mortgage servicing rights in order to retain the relationship with the borrower, as well as the servicing fee and other ancillary income.
>
> In still other cases, servicers have no role at all in origination or loan ownership, but rather purchase mortgage servicing rights on securitized loans or are hired to service a portfolio lender's loans. These different servicing structures can create difficulties for borrowers if a servicer makes mistakes, fails to invest sufficient resources in its servicing operations, or avoids opportunities to work with borrowers for the mutual benefit of both borrowers and owners or assignees of mortgage loans.
>
> ***
>
> Contracts between the servicer and the mortgage loan owner specify the rights and responsibilities of each party… servicer contracts govern servicer requirements to advance payments to owners of mortgage loans, and to recoup advances made by servicers, including from ultimate recoveries on liquidated properties.
>
> Compensation structures vary somewhat for loans held in portfolio and securitized loans, but have tended to make pure mortgage servicing (where the servicer has no role in origination) a high-volume, low-margin business. Such compensation structures incentivize servicers to ensure that investment in operations closely tracks servicer expectations of delinquent accounts, and an increase in the number of delinquent accounts a servicer must service beyond that projected by the servicer strains available servicer resources. A servicer will expect to recoup its investment in purchasing mortgage servicing rights and earn a profit

---

[1] The text of this paragraph, as well as paragraphs    is quoted from the Final Rule and Official Interpretations promulgated by the Consumer Financial Protection Bureau, pages 14-17 Available at http://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa.pdf (Last Visited on November 6th, 2014)

primarily through a net servicing fee (which is typically expressed as a constant rate assessed on unpaid mortgage balances), interest float on payment accounts between receipt and disbursement, and cross-marketing other products and services to borrowers. Under this business model, servicers act primarily as payment collectors and processors, and will have limited incentives to provide other customer service. Servicers greatly vary in the extent to which they invest in customer service infrastructure. For example, servicer staffing ratios have varied between approximately 100 loans per full-time employee to over 4,000 loans per full time employee. Servicers are generally not subject to market discipline from consumers because consumers have little opportunity to switch servicers. Rather, servicers compete to obtain business from the owners of loans—investors, assignees, and creditors—and thus competitive pressures tend to drive servicers to lower the price of servicing and scale their investment in providing service to consumers accordingly.

Servicers also earn revenue from fees assessed on borrowers, including fees on late payments, fees for obtaining force-placed insurance, and fees for services, such as responding to telephone inquiries, processing telephone payments, and providing payoff statements. As a result, servicers have an incentive to look for opportunities to impose fees on borrowers to enhance revenues. These attributes of the servicing market created problems for certain borrowers even prior to the financial crisis. For example, borrowers experienced problems with mortgage servicers even during regional mortgage market downturns that preceded the financial crisis. There is evidence that borrowers were subjected to improper fees that servicers had no reasonable basis to impose, improper force-placed insurance practices, and improper foreclosure and bankruptcy practices.

## COUNT I – VIOLATION OF THE ERROR RESOLUTION AND INFORMATION REQUEST PROCEDURES ESTABLIHSED BY RESPA AND REGULATION X

12.     Plaintiff re-alleges and incorporates by reference her allegations in Paragraphs 1 through 10 above.

13.     This is an action for actual damages, statutory damages, attorney's fees and litigation costs brought pursuant to RESPA (12 U.S.C. 2605(f)).

14. Through her Qualified Written Request/Notice of Error attached hereto as Exhibit "A," Plaintiff alerted Green Tree of errors on Plaintiff's loan account, and requested information related to the servicing of her mortgage loan.

15. Green Tree was therefore obligated to respond regarding the errors. However, as Green Tree's response attached hereto as Exhibit "B" reflects, Green Tree only mentioned it would need the extra fifteen (15) days to respond, but never did so. Green Tree violated the RESPA/Regulation X error resolution procedures by failing to actually respond within the applicable deadline addressing the errors, and by failing to provide the requested information.

16. As a result of Green Tree's violation of the RESPA/Regulation X error resolution procedures, Plaintiff has been damaged. These damages include the misapplied funds, additional unwarranted finance charges flowing from the errors, costs associated with preparing and sending Plaintiff's Qualified Written Request/Notice of Error, the cost of legal services associated with the anticipated future foreclosure, and emotional distress. As a result of Green Tree's violation of the information request procedures, Plaintiff has been denied access to information necessary to evaluate the extent to which Green Tree has mishandled the loan, thus making it impossible for Plaintiff to evaluate how much, if anything, she owes to cure the delinquency that Green Tree asserts. As a result, Borrower will be subjected to additional default related charges, and will likely incur legal fees in pursuing this information either through this action, a foreclosure action, or both of them. Similarly, the costs she expended, including the costs of certified mail, in attempting to invoke the RESPA/Regulation X error resolution procedures came to naught, and therefore are also recoverable damages under RESPA.

17. In 2010, Congress passed the Dodd Frank Wall Street Reform and Consumer Protection Act, which amended the Real Estate Settlement Procedures Act ("RESPA") and

authorized the newly created Consumer Financial Protection Bureau ("CFPB") to promulgate rules implementing the RESPA amendments. The CFPB in turn amended Regulation X, 12 C.F.R. Part 1024, and those amendments became effective on January 10th, 2014.

18.  12 C.F.R. § 1024.35 and 12 C.F.R.§ 1024.36 require mortgage servicers, including Green Tree, to acknowledge and investigate notices from borrowers asserting that there are errors affecting their mortgage accounts, or requesting information relating to the servicing of their mortgage loan.

19.  The official interpretations promulgated by the CFPB also require mortgage servicers, including Green Tree, to develop policies and procedures necessary to implement the requirements of RESPA and Regulation X.

20.  Through undersigned counsel, Robert Burdick, another borrower also represented by the undersigned, notified Green Tree of serious errors affecting his account and causing a wrongful foreclosure. Although Green Tree responded to that letter, its response was non-responsive and demonstrates that it did not comply with its obligation to reasonably investigate the concerns that Mr. Burdick raised. Green Tree also responded to Mr. Burdick's follow up correspondence identifying the deficiencies in its initial response and requesting escalation with a similarly insufficient and non-responsive reply. A related lawsuit is now pending in this District in Case No. 0:14-cv-62137-JIC.

21.  Similarly, although it received and acknowledged Plaintiff's RESPA/Regulation X Notice of Error and Request for Information in the case at bar, Green Tree wholly failed to substantively respond to either request.

22.  In summary, two different borrowers have submitted a total of three requests, and Green Tree has failed to substantively respond to any of them. This suggests systemic

deficiencies within Green Tree and a failure to comply with Regulation X's requirement that mortgage servicers implement reasonable policies and procedures. Thus, Green Tree's failure to comply with Plaintiffs' RESPA/Regulation X request is not an isolated incident, but rather a pattern and practice of non-compliance with its statutory and regulator obligations. As such, and in addition to actual damages, Plaintiff is also entitled to an award of statutory damages.

23. Plaintiff has retained undersigned counsel to represent her in this action and is entitled to an award of prevailing party attorney's fees pursuant to the attorney fee shifting provisions of RESPA found at 12 U.S.C. § 2605(f)(3).

WHEREFORE, Plaintiff demands trial by jury and respectfully requests that this Honorable Court enter judgment in the entire amount of her damages as determined at trial.

## COUNT II. – NEGLIGENCE

24. Plaintiff re-alleges and incorporates by reference her allegations in Paragraphs 1 through 10 and 14 through 22 above.

25. This is an action for damages, including punitive damages, in excess of $75,000, exclusive of interest, attorneys' fees, and litigation costs.

26. Regulation X (12 C.F.R § 1024.35 (e)), imposes an affirmative duty upon Green Tree to conduct a reasonable investigation and correct errors identified by a borrower through a Qualified Written Request/Notice of Error. If Green Tree, after a reasonable investigation, concludes there was no error, Green Tree has an affirmative duty to provide the borrower with written notice giving reasons why it found there were no errors. Green Tree has breached that duty by failing to respond to Plaintiff's Qualified Written Request/Notice of Error attached hereto as Exhibit "A"

27.     Green Trees' failure to comply with the above referenced statutory, regulatory, and common law duties are willful or wanton, and the consequences of Green Trees' calculated decision not to implement sufficient procedures, employ sufficiently trained staff, or properly supervise its mortgage servicing staff in order to adequately comply with these duties and obligations.  Green Trees' omissions are a direct consequence of its decision to forego the implementation of appropriate policies, procedures, staffing, and supervision in order to minimalize its overhead and maintain its profit margin.  Green Tree knew or should have known that its failure to act would cause economic injury to Plaintiff and others similarly situated.  In order to deter Green Tree from continuing to engage in similar misconduct in the future and vindicate the deterrent function of tort law, an award of punitive damages in this action is both appropriate and necessary.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

THE LAW OFFICES OF JEFFREY N. GOLANT, P.A
1000 W. McNAB RD. STE. 150
POMPANO BEACH, FL 33069
Phone: (954) 942-5270
Fax: (954) 942-5272
Email: jgolant@jeffreygolantlaw.com
By: **/S/ JEFFREY N. GOLANT ESQ.**
Fla. Bar. No. 0707732
Counsel for Plaintiff Ileana Rousseau